Good morning, Your Honors. Randall Johnson on behalf of the appellant, Wallace Howsey. I'd like to reserve three minutes of my time for rebuttal. The first issue that needs to be addressed is the law that's applicable to these policies. And specifically, Transamerica's made an argument in this case that the court's role in interpreting the insurance contract is simply to enforce the language that is within the policy. That may be appropriate in some cases where the validity of the contract or the validity of the clause is not in dispute. That is in dispute in this case. And specifically, the law as it relates to this case is that the court must examine whether that policy language complies with Washington law. And specifically, if we look at how we're referring to that, that becomes an issue in the conformity clause. The reason there is a conformity clause within these contracts is because they don't always contain clauses that do comply with Washington law. Washington law, specifically RCW 48, 18, 510, says that these policies that are being interpreted in accordance with Washington law. This is also what brings us to both the Bushnell versus Medeco case and the Durant case, Durant versus State Farm. Bushnell versus Medeco was another long-term care insurance claim. In that case, there was a three-day hospital stay requirement. And if you look at that case, specifically, the court did not simply enforce that three-day hospital stay. The court looked at whether or not that was a valid basis for limiting or restricting coverage under Washington law and found that clause was invalid. The same is true in Durant. Durant is the Washington State Supreme Court's most recent decision, which addresses terms and conditions that an insurance company uses that might or might not violate Washington law. Under Durant, no insurance contract can contain terms that are less favorable to the insured than terms that are either mandated or described in definition by the Washington statutes. There are four specific examples where this comes into play with respect to Transamerica's policy. First, the Washington regulations are set up on a dichotomy between institutional care and community-based health care. Community-based health care is a third-party provider coming into your home and providing the services in your home. But aren't there separate schemes? I mean, doesn't the Washington law deal with nursing home regulations and assisted living facility regulations? Yes, it does, Your Honor. But long-term care policies are for institutional care. Institutional care is not limited to nursing home care or assisted living facility care. Those are two different categories within institutional care. But the institutional issue is the operative language. The institutional issue is that you have an overnight stay in a facility, and they provide something more than that. So yes, Washington does identify nursing home levels and assisted living facilities, adult family homes, boarding homes. But that still would be considered part of the definition of institutional care. So the second or the first area is in that institutional care. Transamerica is changing Washington's definition of institutional care and inserting its own definition of nursing home. In other words, institutional care under Transamerica's policy is limited to a facility that is licensed as a nursing home. But the key fact there again. So what's the purpose of the rider? I mean, why would you get a rider if it was going to include all of this? I mean, wasn't that to expand the nursing home coverage to additional types of care like assisted living facilities? No, Your Honor. And if I can explain that. The rider itself is what Transamerica now uses to say that this coverage was excluded by the policy. Yet the statute specifically prohibit Transamerica from using a rider to differentiate benefit amounts based upon the level or skilled care. So in other words, the statute specifically says that you cannot use a rider to say that we are going to offer nursing home benefits at this level, a skilled nursing level, and then assisted living facility level at a lower rate. Again, because the statute is written so that it's institutional care. They don't break it down in that way. They do break it down with some defined terms, specifically skilled care, intermediate care, and personal and custodial care. And it's important to note that skilled care is also a term that Transamerica is substituting in connection with these cases. We know that from the tips and scripts that Transamerica gives to CareScout. And what they do is they tell CareScout, don't use skilled care, but go to the facility and ask them a question about nursing care. And by nursing care, we mean care that can only be provided in a facility that's licensed by the state of Washington as a nursing home. Under their definition, even though Washington allows nursing care or skilled care to be delegated to certified nurse practitioners or others, Transamerica's definition does not include that. So they're using a more restrictive definition of nursing care. They're also using a more restrictive definition of nursing home. Washington definition of nursing home says any care facility that provides care for a number of individuals who are not related by blood or marriage for a period in excess of 24 hours, that would be considered a nursing home. And in connection with this one, it's more restrictive in the sense that it's licensed as a nursing home. The other area that specifically Transamerica uses to narrow the coverage, again, comes back to the facility form. And in there, they ask a binary question. That binary question is, is the care that this facility provides primarily related to the nursing care as we've defined it, or is it primarily related to personal and custodial care? They eliminate any discussion or any interaction of intermediate care. Again, skilled care, intermediate care, those are all defined terms that must be provided in the policy. And if you walk through the statutes, specifically the Washington regulations, and that's 284.54 beginning at 010, they provide triggers to coverage. Section 150 is the minimum standards for these policies, what they must cover. And then you have the permitted coverages, the triggers to coverage, and the exclusions. Now, a few points to make here. First of all, when we talk about this policy, Transamerica is not citing an exclusion under the policy. They're citing a definition. And that definition comes in in terms of a trigger to coverage. So again, the statutes specifically say that policies must cover. And the two key factors there, under WAC 284.54.1504, a long-term care contract must cover skilled, intermediate, and custodial personal care, whether benefits are for institutional or community based care. Subsection 6 says, no insurer may offer a contract form which requires prior skilled or intermediate care as a condition of coverage for institutional or community based care. So Transamerica is arguing that you must be admitted into a nursing home before you get coverage under this policy. That's a clear violation of that statute. And then in addition to that, you have the benefits triggers. Those are tied to activities of daily living. And again, the statute says nothing more restrictive than tying those triggers to benefits to the activities of daily living. And in connection with this case, Transamerica inserts this conjunctive argument that in order for there to be coverage under the policy, three conditions must be met. And the last one is that care must be provided in a nursing home. And that's the defined term of nursing home. So again, Transamerica is not pointing to a definition, or excuse me, an exclusion within the policy. What they're doing is pointing to an exclusion, excuse me, a definition of the term nursing home, which comes up in the grant of coverage. And again, we pointed out that the grant of coverage is liberally construed in favor of the insured. And here they're using it in a restrictive way. It's also important to note that there is no, the Washington statute specifically say there are 14 reasons or exclusions that the long term care insurance providers are permitted to use. They have to do with, for example, treatment in a facility that is a drug or alcohol treatment facility, a Medicare facility, or other types of facilities. Those are restrictions on where services cannot be provided. And in connection with that, there is no statute. Again, it must be one of the 14 in order to be permitted under Washington law. There is no provision that says that you can exclude coverage under the policy because the facility is licensed as a nursing home. So again, they're using that as an exclusion. And when we raise that in connection with our brief, they say, well, it's not an exclusion. It's a condition of coverage. And then when you raise it and say, well, it's a condition of coverage, it violates the triggers to coverage under those statutes. And they say there's nothing in Washington law that prohibits us from limiting where these services can be provided. That would be an exclusion. And that is prohibited. It's also important to note one brief comment about substantial compliance. The policy's definition of nursing home contains a clause that says a facility that does not directly meet all five elements of the nursing home definition but substantially complies would be considered a valid nursing home entity. In connection with this, Transamerica sent a denial letter. And the denial letter specifically says that the policy definition of nursing home was not met because the facility was not licensed as a nursing home. It continues and says the facility is not in substantial compliance with the policy definition because the facility was not licensed as a nursing home. That's an illusory promise of substantial compliance. What they're simply doing is saying complete compliance with the policy definition is required. That brings us to the bad faith. The issue of bad faith, there's procedural bad faith. There are other substantive issues of bad faith. And I use that term collectively because there's a common law bad faith claim. There's an Insurance Fair Conduct Act claim. There's a Consumer Protection Act claim. When I use the term bad faith, I'm not referring just to the common law claim of bad faith. In connection with this case, we provided the court with evidence. And the court's decision on the policy definition controlled its decision on the bad faith. The court specifically said that no reasonable juror could find that Transamerica's actions were unreasonable given its straightforward, the policy definition of nursing home basis for denying a claim. Once Transamerica conclusively determined that Aegis was not licensed as a nursing home, a fact that Mr. Howsey does not dispute, it became reasonable for Transamerica to deny a claim for the nursing home benefits for care at that facility. Now, that's not necessarily a correct statement of law. As we pointed out, there were issues of material fact that were resolved by the trial court in connection with that. Specifically, Washington law provides that there still can be coverage, or excuse me, still can be a bad faith claim even if there is no coverage. Second, under Smith v. Safeco, we specifically noted that the insurer can provide evidence of why they spoke to or why they denied a claim. But the insured is also allowed to offer or rebut that. And Smith talks about the evidence that may be presented. And it creating an issue of material fact. In connection with this case, we pointed out that these policies were priced wrong from the start. And they were assumptions made about the lapse rates and others. This particular insurance carrier submitted rate increased requests to the Office of Insurance Commissioner. Those were denied. The 30B6 deposition that we took in another matter of Transamerica's actuary attested to those issues. And specifically, we then also put the evidence before the court that Transamerica was using its facility evaluation form as a contextual basis for denying these claims. We pointed out, for example, that Transamerica was informing CareScout that it needed to use a very restrictive definition. It didn't even tell its claim representatives that it was using this restrictive definition. And then these claim representatives, when they're asked the question of, what definition did you use of nursing services? They say, I don't know. I didn't use what Transamerica used in its facility evaluation. And I didn't use what was under Washington law. I can't tell you what I used. If that's not an arbitrary and capricious act, then that's certainly evidence of bad faith. Certainly evidence that the trial court could not have resolved. Counsel, if you want to save some time for rebuttal, you should do that. Ms. McCabe. Yes, Your Honor. Good morning, Your Honors. Good morning. Appreciate the time. Please, the court. My name is Juliana Thomas McCabe. Here this morning representing Transamerica Life Insurance Company, which paid and administered Wallace Hallisey's claim for long-term care benefits under a long-term care insurance policy at issue in this case. This is an appeal from Judge Ricardo Martinez's well-reasoned opinion, which resolved the party's cross motions for summary judgment in Transamerica's favor. I'd like to make it clear, Your Honors, from the outset that the insured in this case was paid his claim for assisted living facility benefits under his policy. This is not a case about a claim denial. It's not a case about a policy exclusion. It's a case about different benefits available in the policy for different types of facilities. And Mr. Hallisey's request that he continue to be paid despite that he's exhausted the assisted living facility benefit now under the nursing home benefit provisions of the policy. It's undisputed. He wants to remain in the assisted nursing facility, right? He does. His son wants him to remain in the assisted living facility. That is correct, Your Honor. He doesn't want to move him. And for that reason, Transamerica offered him an alternate care provision, which is a specific provision under the policy that contemplates such a situation where someone has been being paid benefits under the policy, but perhaps their situation suggests that they may need, or the most appropriate treatment for them may be something that is no longer covered. As here, the policy has an alternate care provision, which allows the company to say, well, we'll continue to provide you benefits under certain circumstances under this alternate care provision. They offered that to Mr. Hallisey. It would have continued to pay him the same level of benefit he had been receiving under the assisted living facility benefit up to, through, and including the exhaustion of his $150,000 of nursing home benefits, but he rejected that offer inexplicably. If he had qualified for nursing home care benefits, would he have gotten more? If he had accepted the alternate plan of care, he would have stayed in the assisted living facility, and any benefits he used under that alternate plan of care would have come out of his nursing home benefit. I see. So then eventually, if he needed nursing home care, then that- Then he would have exhausted it if he had stayed in there. That amount would have been exhausted. That's correct. I see. He also could have moved, Mr. Mike Hallisey could have moved, and still can move his father into a nursing home facility to access those additional benefits. They remain available to him. The claim letter informed him of that fact. So the policy defines assisted living facilities and nursing homes differently, and they are two different types of facilities under Washington law. Washington statutes, as Judge Vachon, as I think you recognize, there are two completely separate chapters on assisted living facilities and nursing homes. They provide different types of care. Mr. Hallisey's assisted living facility provides him with an apartment. It is very different from a nursing home. It allows pets. It provides personal care services. It provides some assistance with medication, and that sort of thing, but not the type of nursing care that someone gets in a nursing home. And that's not disputed. But this appeal really involves a simple application of simple contract language. There's a nursing home definition in the policy that requires that the facility be licensed as a nursing home. The argument that I heard this morning was that that violates Washington statutes and regulations. So as I understand his argument, let me back up just a moment. You're correct. If you just look at the policy, seems like the terms are unambiguous. But his argument is, well, you can't just look at the policy. You have to look at the statutes and regulations that govern long-term care. That's correct. That is his argument. Long-term care facilities. And he says that your policy doesn't measure up. Yes, he's incorrect about that, Your Honor. There is not a single Washington statute or regulation that prohibits insurance companies offering long-term care policies from differentiating among different types of facilities or requiring appropriate licensure in order for a facility to be considered a nursing home under the policy. And our brief goes through each of those. The district court carefully went through each of the regulations and statutes that he cited and basically rejected each one of those arguments out of hand. And I can go through a few of them here. So for example, Your Honors, counsel talked about benefit triggers and he cited Washington Administrative Code 284-54040. And the benefit triggers under this policy are activities of daily living or cognitive impairment. There is no question here that Mr. Halassie has met the benefit triggers under the policy. He received benefits. He's been approved already for three types of benefits. Home health care, which he did not use. He instead went into an assisted living facility. Assisted living, which he has been paid. Alternate care, which he has rejected. And there is no question, and it is undisputed and my client would agree that if he goes into a nursing home, he has met the benefit trigger of cognitive impairment to be entitled to nursing home benefits. Next. He says the fact that you just require him going into a nursing home is a benefit trigger. Yeah, that is incorrect and a misstatement of the statute and the law. Explain to me. Right, because the benefit triggers are identified in the policy. And I can direct you to the exact page. So on page seven of the policy, which is ER 350, the benefit triggers are listed there. The benefit triggers are that the treatment has to be medically necessary. It has to be required because of a cognitive impairment or it has to be required because of your inability to perform at least two of the five activities of daily living. Those are the benefit triggers and it is unquestioned that Mr. Halassie has met those triggers. Okay. Also, he discussed that Washington Administrative Code 284-54-150, that regulation provides minimum standards for long-term care insurance. It provides that the policies must cover skilled, intermediate, and custodial or personal care, whether the benefits are for institutional or community-based care. There is no question that this policy provides those benefits. Whether Mr. Halassie is receiving skilled, intermediate, custodial, or personal care, any of those types of care, if he is in the facility for which the benefit applies, he will receive benefits. So in other words, if he's in a nursing home but he only has dementia and he only needs reminders with medication and he only needs to be supervised, but he doesn't require skilled care, he will still be entitled to the nursing home benefit. He simply has to be in a nursing home. It's simple logic, Your Honors. Section, subsection six of that section provides that the long-term care insured may not require prior skilled or intermediate care as a condition of coverage for institutional or community-based care. And this relates to the type of condition that counsel referenced, for example, a three-day prior hospitalization requirement would violate that because the long-term care insurance company would be requiring prior care regardless of the benefit triggers in order for the nursing home coverage to kick in. There is no such requirement under this policy. As soon as he entered the assisted living facility, for example, and the assisted living facility met the definition of assisted living facility under the policy, he was entitled to assisted living facility benefits. So there are multiple other statutes and regulations that are cited in the appellant's brief. The district court went through each of them. The policy does not violate any of them. Now, there was, the last issue that he discussed was the substantial compliance with the nursing home. Yes, Your Honor. Could you respond to that? Absolutely. So with respect to, first of all, the substantial compliance definition or the substantial compliance clause in the policy is not exactly as appellant's counsel described it. The substantial compliance provision in the policy states that if Transamerica's personal care advisor agrees that the facility substantially complies with the nursing home definition, it can provide nursing home benefits. Here, the district court properly found that provision was not at issue because there was no evidence in the record that Transamerica's personal care advisor agreed that the facility substantially complied. And indeed, the facility does not substantially comply because it is a completely different type of facility. It is an assisted living facility that provides primarily personal care services. It is not licensed as a nursing home. It does not identify itself as a nursing home. It does not attempt to provide the same types of care that can be provided in a nursing home. It does not attempt to meet the regulations under Washington law that would entitle it to be licensed as a nursing home. So the facility did not substantially comply, but that wasn't exactly the question before the district court. The question before the district court was, did Transamerica's personal care advisor agree that it substantially complied? And the personal care advisor did not. And that is undisputed. I'd like to reiterate, your honors, that Mr. Howise received $35,000 of benefits under the assisted living facility provisions of his policy. And he is still entitled to nursing home benefits. What is somewhat baffling in this case is that Mr. Howise's son rejected the company's offer that would have allowed him to stay in the assisted living facility and continue to receive benefits at the same level up through the exhaustion of his nursing home coverage. There was no reason given for that. There's no evidence in the record as to why he did that. And he doesn't have any damage, even if there were a breach of the contract here, which there was not. Also, he cannot state a bad faith claim. He mentioned bad faith. It is an absolute defense to a claim of bad faith under Washington law, if there is no breach of the contract. There is one exception to that, and that is what's called Coventry claim. Under the Coventry case, the Washington Supreme Court held that in some instances, a first party insured can be damaged by a bad faith investigation, even when there's no coverage. That would happen, and in that case it happened because even though the coverage decision was correct and there was no coverage, the insurer refused to undertake an investigation of the insured's claim. As a result, the insured had to hire its own investigator and incurred expenses investigating the claim and providing evidence of the claim. There is no such fact here. Here, there is no question, and the district court correctly found that the company undertook a detailed investigation, even though it already had paid ALF benefits once Mike Howesey claimed that the benefits should be paid under the nursing home policy or the nursing home benefit. The company did further investigation of the facility, and it made a straightforward determination. It made a timely denial, and it made an offer that would have helped to mitigate any impact on him, even though he was not entitled to those benefits. So as a matter of law, there is no claim here for bad faith, and it is perfectly appropriate for the district court to decide a bad faith claim under Washington law at the summary judgment phase when the facts are undisputed. Your honors, I have additional time, but I don't wanna burden you with more, you know, repeating my arguments. So I would just say here that the district court correctly made its determination on summary judgment. It correctly denied discovery once the summary judgment cross motions were filed because the appellant did not point the court to any specific facts that it intended to find in discovery that would have changed the outcome, and the district court correctly granted summary judgment on bad faith as well as breach of contract. And we request respectfully that you affirm the district court in all respects. Thank you very much for your time. Thank you, counsel. Okay. Mr. Johnson for rebuttal. Briefly, I will try to race through this. First of all, the district court, this appeal is de novo. So what the district court said, and there are many issues that I can take with the district court's approach, but I believe it's de novo. I did not hear a new argument raised why it should be supported other than district court, or the de novo. First of all, let's also talk about the differences. The $35,000 was paid as an additional benefit. Mr. Howsey did obtain additional coverage for assisted living facility. That pays him a lower rate, one half of the rate that the nursing home benefit pays. And if you look specifically at RCW 48-8404-0, subsection five, that clause prohibits long-term care insurance policies or benefits from differentiating benefit amounts on the basis or the type or level of nursing home care provided. That's exactly what Transamerica is doing then. Well, that's nursing home care provided. But that's the definition of Washington nursing home. So in other words, they're substituting a more restrictive definition of nursing home for the Washington definition. And nursing home care is broader than that. You're saying it's more restrictive because it says a nursing home has to be licensed by the state of Washington? That's one aspect to it, yes. The Washington definition of nursing home says any care facility. So I only have a brief minute, but the care that Mr. Howsey is paying on a daily basis is $165 a day, and they're offering $75 a day for his care. If he was getting the nursing home benefit, which he is entitled to under the policy, he would be getting approximately $150 a day. And again, there's nothing in the policy that prohibits, I'm sorry, treatment. And one of the things I wanted to address briefly is treatment. Nursing homes do not provide dementia treatment. Transamerica is quick to say that they are authorized to provide it, but those facilities that treat dementia are not licensed as nursing homes. They don't have secure facilities. The needs of the patient is not acute medical care that would be provided in a nursing home. It's assistance with medication, reminders of what to take, when to take, how to take. It's also to keep them from wandering. Those are the types of things that a nursing home does not provide, but an assisted living facility does. And assisted living facilities, or excuse me, licensed as assisted living facilities. That's consistent with Washington law, which has expanded the nursing care that can be provided in a facility that is licensed as an assisted living facility. It specifically is trying to allow aging in place. Another thing to recognize is that Transamerica cites the definition of assisted living facility in the policy when the policy was sold. It's very important to note that when this policy was sold to Mr. Housy, there were no, not one, assisted living facilities in the state of Washington. But it lists assisted living. I mean, he bought a rider that assists assisted living, so there was some understanding that the rider was going to cover assisted living facilities, right? Cover something, but that's a separate layer of coverage under the policy as well. So if his care meets the policy definition of nursing home, then you look at the triggers to benefits of the nursing home benefit. Okay, counsel, your time is more than expired, so you should complete your sentence, but. Thank you, we ask that our case be reinstated and specifically ask for the liquidated damages and attorney's fees on our Olympics team ship. Great, thank you. Okay, well, let me say a Housy case shall be submitted. That's our last case for the day to be argued, but I do want to commend counsel on both sides of the case for excellent arguments. These insurance cases are always tough. So we thank you, and the court will now, I guess it's recess. We'll recess until tomorrow morning. Thank you all.
judges: Gould, Paez, Bashant